**CITY OF FRANKFORT, Kentucky, et al., Appellants,**

v.

**The SILENT WORKERS CIRCLE OF the KINGS DAUGHTERS AND SONS (FRANKFORT, KENTUCKY) INC., Appellee.**

Court of Appeals of Kentucky.

March 4, 1977.

Allen Prewitt, Jr., City Sol., City of Frankfort, Frankfort, for appellants.

Joseph J. Leary, Frankfort, for appellee.

Before GANT, HOWERTON and COOPER, JJ.

GANT, Judge.

This action was brought by the City of Frankfort, Kentucky, and an interested taxpayer to set aside a deed dated November 26, 1975, executed by three commissioners of the City of Frankfort, pursuant to a duly enacted resolution, to the Appellee, The Silent Workers Circle of the Kings Daughters and Sons (Frankfort, Kentucky)

Inc. The consideration for this deed was $1.00, together with the agreement by Kings Daughters to assume and save the City harmless from any indebtedness which might be incurred because of the failure of Kings Daughters to operate the hospital for the period of time provided for in the agreement under which Hill-Burton funds were received, which funds were used in the construction of the annex in question. There was a further provision surrounding the execution of this deed and that was the agreement of Kings Daughters to convert the premises into apartments for the elderly which would be rented on a cost basis, and the deed contained a reverter clause providing that title to this property would revert to the City in the event the property ever ceased to be used for that purpose or to be operated on a non-profit basis.

A history of Kings Daughters Hospital and its relationship with the City of Frankfort is necessary in order to put this case into proper perspective. In 1954, when this hospital had been operated for approximately 50 years, the hospital had become virtually obsolete and it was necessary to construct an annex to the hospital in order to provide modern facilities and equipment for the growing population of Frankfort and the surrounding area. In these pre-revenue-sharing days, the principal source of income for the City of Frankfort was a municipally owned utility operated by the Electric and Water Plant Board of the City of Frankfort. Federal funds, under the Hill-Burton Act, were available only through municipally owned facilities and so a paper transaction was arranged by which the Appellee, Kings Daughters, would transfer the ground upon which the annex was to be constructed to the City of Frankfort. The City of Frankfort would, in turn, issue $350,000 worth of revenue bonds, these bonds to be purchased by the Electric and Water Plant Board, as there was no readily available market for them otherwise. An additional $350,000 of Hill-Burton funds would then be allocated and the annex constructed with this $700,000. The property was then to be leased back to Kings Daughters for the purpose of operat-

ing a non-profit hospital on this site. All of this was carried out and some time in 1955 the site was deeded to the City of Frankfort for a nominal consideration. Some 20 years later, these facilities again became inadequate and it was necessary for Kings Daughters to relinquish its license to operate a non-profit hospital and a new hospital was constructed, rendering this property surplus so far as its use as a hospital was concerned. By this time, the Utility Board had paid off the bonds through the use of their own revenue and without the benefit of revenue from the general tax funds of the City of Frankfort. Although all the funds for the amortization of these bonds were paid from the revenues of the utility, they apparently had no objection to this transfer of the property back to Kings Daughters or the operation of the apartments thereon as hereinabove set out.

It should be noted that the entire transaction relating to the issuance of the bonds by the City and their purchase by the Board was approved by the Court of Appeals of Kentucky on March 11, 1955, in the case of *Perkins v. City of Frankfort et al.*, Ky., 276 S.W.2d 449 (1955). That action was apparently a taxpayer's suit, challenging the validity of the ordinances providing for the issuance of these revenue bonds by the City and the purchase of those bonds by the Electric and Water Plant Board for the purpose of building a hospital annex. This action is apparently the second action in the chain, this one seeking to prohibit the transfer of the annex property back to the original grantor under the circumstances which we have heretofore described.

█ It is the opinion of this Court that the transfer by deed of the annex property in question here was a valid transfer by the City of Frankfort under all of the attending circumstances. First, it is doubtful that the City of Frankfort or any taxpayer thereof is the real party in interest to bring this suit. Ky.Rev.Stat. 96.175 provides as follows: "(7) The title to any property, real or personal, which the board may acquire shall vest in the municipality for the use and benefit of the electric and water system."

There can be little doubt that title to this property was acquired by the Board of the Electric and Water Plant of the City of Frankfort. They had agreed to purchase the bonds before they were issued and did purchase them and it was their revenue which was utilized to pay off these bonds. Under this Statute, the City would occupy a quasi-trusteeship of the naked legal title for the use and benefit of the Board and not for the use and benefit of its own taxpayers. The Board is not a party to this action.

■ It seems to this Court that the issue is also settled by the use to which Kings Daughters has agreed to put the property. In addition to the consideration of $1.00 and the further consideration that the Appellee would hold the City harmless from any liability toward the refunding of Federal funds for failure to operate the hospital for the prescribed period of time, there is the agreement of the Appellee to operate housing for the elderly on a cost basis. In the case of *Ezelle et al. v. City of Paducah et al.*, Ky., 441 S.W.2d 162, 164 (1969), we find the following statement:

Under the holdings of this court that a governmental body may choose a private institution as an instrumentality for the accomplishment of a public purpose we find no violation of Section 179 . . . applied in the instant case. [See also] *Norman v. Kentucky Bd. of Managers World Columbian Exp.*, 93 Ky. 537, 20 S.W. 901, 18 L.R.A. 556; *Board of Trustees of House of Reform v. City of Lexington*, 112 Ky. 171, 65 S.W. 350; *Hager v. Kentucky Children's Home Society*, 119 Ky. 235, 83 S.W. 605, 67 L.R.A. 815; *Butler v. United Cerebral Palsy of Northern Kentucky, Inc.*, Ky., 352 S.W.2d 203.

Providing housing for the elderly at cost by a charitable corporation is, in fact, serving a specific public purpose.

For the reasons above stated, the case is affirmed.

HOWERTON, Judge, concurring.

I concur in the result reached by the majority, but I must differ in the reasoning by which such result was reached.

This action is an appeal from a summary judgment of the Franklin Circuit Court, wherein the Court concluded that there was no issue of fact in controversy, and that as a matter of law, the City of Frankfort, pursuant to a properly enacted ordinance, conveyed property to the Appellee with a covenant of special warranty of title and that the deed recited adequate consideration and was binding upon the parties. I affirm this decision of the Franklin Circuit Court.

I am at an absolute loss to understand where the majority found the evidence to conclude that "the City would occupy a quasi-trusteeship of the naked legal title for the use and benefit of the Board (Electric and Water Plant Board of the City of Frankfort) and not for the use and benefit of its own taxpayers." I must also conclude that KRS 96.175(7) has no application to this case. The subsection reads as follows: "The title to any property, real or personal, which the board may acquire shall vest in the municipality for the use and benefit of the electric and water system." The property in question was never acquired by the "Board"; it was acquired by the City of Frankfort, and if it was acquired for the use and benefit of anyone, it was for the use and benefit of the Appellee.

The issues raised by the parties to this appeal are as follows: The Appellants argue that a legislative body of a Kentucky municipality may not make a gift of city-owned real estate to a private corporation, and that a deed by which such gift was made may be cancelled. The Appellee contends that the City has no standing to maintain this action, and further, that the City is estopped to maintain this action.

I agree at the outset that the City may not give real property to a private corporation, but I conclude that the facts surrounding the transfer of this property do not constitute a gift. I am also disposed to agree with the Appellee that the City has no standing to maintain this action and that, under the circumstances of this case, the City would be estopped by its deed.

But, there is still the taxpayer to contend with. As stated in *McQuillin Municipal Corporation*, 3rd Edition, Vol. 10 § 28.49:

> If a municipal corporation purports to transfer its property without power to do so, it may, in some instances, avoid or set aside the invalid transfer . . . and the restraint, recision, or cancellation of such a transfer may be compelled in a suit by a taxpayer, or by other appropriate court process, provided such avoidance is not barred by the doctrine of estoppel to the extent that it is applicable against the municipal corporation. . .

The Kentucky legislature has enacted three general statutes granting municipalities the power to dispose of real estate. They are: KRS 65.010, KRS 82.060(1), and KRS 84.010(1). In essence, the statutes gave the City the authority to convey its surplus property for such purposes and considerations as the City legislative body deemed proper for the public welfare.

In the case at bar, the City legislative body did declare the hospital annex to be surplus to its needs and deeded the property to the former owner for the sum of One Dollar with conditions and a reversionary clause. The City originally acquired the property from the Appellee for the purpose of obtaining a Hill-Burton Grant to construct the new wing on the hospital which was owned and operated by the Appellee. The City acquired the property for a nominal sum and essentially held title for the use and benefit of the Appellee. The property was, in fact, leased to the Appellee until June 30, 2014. The new construction was attached to and became inseparable from the original building. The new conveyance was based upon the condition that the property be used for a specific public purpose, to wit: housing for the low and moderate income families of Frankfort. The deed contained a possibility of reverter, conditioned upon the Appellee ceasing to use the property for the stated purpose. Furthermore, the conveyance contained a substantial contingent liability by requiring the Appellee to hold the City harmless in the event the City was required to repay any of the Hill-Burton Grant funds due to the discontinuance of the hospital for which the grant was made.

Although the City held legal title to a valuable piece of real estate, it had almost no investment in it. The municipal utility bought the bonds for the City's matching funds, and the utility has written-off the loss.